**In re Willard O. GOFF, Debtor.**

**INVESTORS CONSUMER CORPORATION, INC., Plaintiff,**

**v.**

**Willard O. GOFF, James P. Rode, Trustee, and Owensboro National Bank, Defendant.**

**Bankruptcy No. 4–81–00024.
Adv. No. 4–81–0015.**

United States Bankruptcy Court,
W. D. Kentucky.

Jan. 27, 1982.

William E. Mitchell, Owensboro, Ky., for defendant-debtor.

Sandra D. Freeburger, Sebree, Ky., for plaintiff.

## MEMORANDUM AND ORDER

STEWART E. BLAND, Bankruptcy Judge.

A voluntary petition in bankruptcy Was filed by the debtor, Willard O. Goff, on January 30, 1981. Subsequently, on April 7, 1981, the plaintiff-creditor, Investors Consumer Corporation (Investors), instituted this adversary proceeding by filing a complaint to have the debt owed to it by Goff found nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A)(B) and § 523(a)(6). Plaintiff alleges that the defendant-debtor in obtaining a loan committed "actual fraud" in that the loan was made at a time when the debtor was contemplating the filing of a bankruptcy petition and/or his financial position was so distressed that he could not have reasonably believed he was capable of repaying the obligation. In the alternative plaintiff contends the debtor gave plaintiff financial information knowing it to be false upon which plaintiff relied, and finally that debtor converted a portion of plaintiff's collateral when he sold some silver coins.

This issue came on for trial on October 5, 1981, at Owensboro, Kentucky, and the pro-

ceeding was submitted to the Court for decision on November 19, 1981, and the Court having considered the testimony and documentary evidence of record, and being otherwise sufficiently advised, hereby enters the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. That a voluntary petition in bankruptcy was filed by Willard O. Goff on January 30, 1981.

2. That a meeting of creditors, pursuant to 11 U.S.C. § 341, was held on March 12, 1981.

3. That the last date to file a complaint pursuant to 11 U.S.C. § 523 was set to June 12, 1981.

4. That a complaint was filed by plaintiff on April 7, 1981, seeking a determination of the dischargeability of its debt pursuant to 11 U.S.C. § 523(a)(2)(A)(B) and (6).

5. That debtor assisted plaintiff in completing a *Loan Application* on November 28, 1980, wherein debtor listed his employment to be an "underground coal miner" for Island Creek Coal Company with a net monthly salary of One Thousand Six Hundred and No/100 Dollars ($1,600.00). (Plaintiff's Exhibit # 1.)

6. That the *Loan Application* also listed the following creditors of Goff: Greenfield Furniture, Slaughters Bank, and Western Auto. (Plaintiff's Exhibit # 1.)

7. That the loan as approved on December 1, 1980, was in the principal amount of $861.84, with seventeen payments of $75.38 and one payment of $82.00, for a total indebtedness of $1,129.38. (Plaintiff's Exhibit # 2.)

8. That the Security Agreement was entered into between the parties whereby Goff granted Investors a security interest in "silver coins in lock box, Owensboro Bank, and a 1974 Merc. 4-door Marq., 8 cylinders, Serial No. 4262A539". (Plaintiff's Exhibit # 3.)

9. That the schedules filed with the debtor's petition on January 30, 1981, delineated the following debts:

Creditors Holding Security – A–2

| | |
|---|---|
| Island Creek Coal Company | $20,000 |
| Peoples Bank & Trust Co. | 1,400 |
| Investors Consumer Corp. | 1,100 |

Creditors having unsecured claim – A–3:

| | |
|---|---|
| Island Creek Coal Co. | $ 700 |
| Peoples Bank & Trust Co. (three loans) | 600 |
| | 400 |
| | 1,500 |
| Powell Lumber Company | 340 |
| Western Auto | 500 |
| United Mine Workers of America Federal Credit Union | 2,000 |
| Goodyear Tire Company | 460 |

10. That the stated purpose of the loan was to pay off a car loan at Slaughters Bank and for Christmas gifts.

11. That the proceeds from the loan were distributed as follows:

| | |
|---|---|
| F. W. Warren Company | $ 53.78 |
| Webster County Court Clerk's Office | 8.00 |
| Slaughters Bank | 422.47 |
| Goff | 378.98 |

12. That the debtor filed bankruptcy because he had been recently divorced, he had been hospitalized due to a nervous breakdown, and he had been unable to work because of his health.

13. That the debtor and his former wife had filed a previous bankruptcy petition approximately six and one-half years prior to this bankruptcy case.

14. That the coin collection given as security for the loan was jointly owned by the debtor and his mother.

15. That the debtor did not make any contract installment payments on the note.

16. That the debtor sold some of the coin collection and used the proceeds for living expenses.

17. That the debtor was unable to meet his obligations as they matured when he obtained the loan from plaintiff.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and the subject matter of this bankruptcy case pursuant to 28 U.S.C. § 1471.

2. The established law relating to dischargeability of debts under the Bankruptcy Act of 1938, § 17(a)(2), 11 U.S.C. § 35(a)(2) generally continues to be applicable to cases under 11 U.S.C. § 523(a)(2). See H.Rep.No.595, 95th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

3. The exceptions set forth in § 17(a)(2) of the Bankruptcy Act [now § 523(a)(2) of the Bankruptcy Code and in essence works no change upon the former law] are to be strictly and literally construed so as to discharge all debts except those specifically within the exceptions; that "actual fraud" must be established by clear, cogent and convincing evidence. *Davison-Paxon Co. v. Caldwell*, 115 F.2d 189 (5th Cir., 1940); *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540 (W.D.Va.1967).

4. Section 523(a)(2)(B) provides that a discharge under Section 727, 1141 or 1328(b) does not discharge an individual debtor from any debt—

"(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive...." 11 U.S.C. § 523(a)(2)(B).

5. The burden of proof is upon the plaintiff to prove each element as provided under Rule 407, Rules of Bankruptcy Procedure, which states:

"At a trial on a complaint objecting to a discharge, the plaintiff has the burden of providing the facts essential to his objection."

6. Each of the elements of section 523(a) must be proved. Thus, a creditor must prove that the debt was obtained by the use of a statement in writing (1) that is materially false; (2) respecting the debtor's financial condition; (3) on which the creditor reasonably relied in extending money, property, services or credit; (4) that the debtor caused to be made or published with intent to deceive. 3 *Collier on Bankruptcy*, ¶ 523.09 (15th Ed. 1979).

7. The burden of proof in dischargeability cases involving false financial statements is a federal question governed by federal law. *In Re Barlick*, 1 BCD 412 (D.R.I.1974).

8. That to come within the exception of Section 523(a)(2)(B), the statement, to be in writing, must either have been written by the debtor, signed by the debtor, or the particular writing must have been adopted and used by the debtor. See 3 *Collier on Bankruptcy*, ¶ 523.09[1] (15th Ed. 1979), citing *In Re Gonzalez*, 287 F.Supp. 281 (S.D.N.Y.1968).

9. Whether or not a statement is material depends mainly upon whether the complainant relied upon it partially or entirely. Reliance must have been a contributing cause for extension of such credit. *In Re Ellis*, 1 BCD 798 (S.D.N.Y.1975). Partial reliance on the financial statement may suffice. However, the financial statement must be shown to have had such weight in the consideration of the lender that the loan would not have been granted had the lender not relied upon the borrower's representations. *In Re Fetherston*, 1 BCD 1485 (W.D. Wis.1975).

10. It is not sufficient to show that the statement is incorrect in fact. It must be materially false. The omission, concealment or understatement of liabilities constitutes a materially false statement. See generally 3 *Collier on Bankruptcy*, ¶ 523.-09[2] (15th Ed. 1979), citing numerous cases.

11. That debtor's assertion of honest motives and innocent intent, uncorroborated by additional evidence, will not rebut the natural inferences from the admitted facts. *In Re Berk*, 356 F.Supp. 453 (E.D.N.Y.1973).

12. To accept statements of honest motives and innocent intent without additional evidence, clear and convincing in character,

would result in affording an easy method of frustrating the purpose of the law. *In Re Monsch*, 18 F.Supp. 913 (E.D.Ky.1937). The Court is not bound to accept self-serving testimony. *In Re Bebar*, 315 F.Supp. 841 (E.D.N.Y.1970).

13. That the law presumes a lack of intent to repay an obligation when the debtor is so hopelessly insolvent that repayment is impossible. *In Re Black*, 373 F.Supp. 105 (E.D.Wis.1974); *In the Matter of Dyer*, 4 BCD 180 (W.D.Wis.1978); 1A *Collier on Bankruptcy* (14th Ed.).

14. That in order for the debtor to come within the exception provided by § 523(a)(6), a creditor must show that the debtor's conduct was malicious as well as willful. *In Re Hawkins*, 6 B.R. 97 (Bkrtcy. W.D.Ky.1980).

15. That the decision of *In Re Cummins*, 11 B.R. 222 (Bkrtcy.E.D.Tenn.1981) defined "conversion" to be ". . . any unauthorized act which deprives an owner of his property permanently or for an indefinite time." Citing *Black's Law Dictionary*, 4th Ed.

16. That the Court in *Cummins, ibid*, elaborated by defining the act of conversion. "To deprive another of his property forever by deliberately disposing of it without semblance of authority is certainly an injury thereto within common acceptation of the words." Citing *McIntyre v. Kavanaugh*, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916).

17. That the term "willful" has been found to mean deliberate and intentional, and a mere technical conversion is not within the meaning of subsection (a)(6). *In Re McCloud*, 7 B.R. 819 (Bkrtcy.M.D.Tenn. 1980) and *In Re Cummins, ibid.; Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1935).

18. That section 523(a)(6) reads in the conjunctive, not the disjunctive, requiring the plaintiff to establish that not only was the act done "willfully", but that it was done maliciously. "Malicious" has been found to mean an "intent to do harm". *In Re Hodges*, 4 B.R. 513 (Bkrtcy.W.D.Va. 1980).

19. That it is well settled that the time of the conversion is the time to be applied in determining the value of the property in an action for conversion. *In Re Auvenshine*, 9 B.R. 772 (Bkrtcy.W.D.Mich. 1981), citing 18 Am.Jur.2d, *Conversion*, § 86 (1965).

## MEMORANDUM

It is the conclusion of this Court that the debtor's representations to the plaintiff were materially false and the plaintiff, after further inquiry as to Goff's financial condition, relied upon the misrepresentations. Debtor's intent to defraud the plaintiff is further evidenced by the fact that at the time he obtained the loan he was insolvent and was unable to pay his obligations as they matured.

WHEREFORE, IT IS ORDERED AND ADJUDGED that the debt owed to plaintiff in the amount of Nine Hundred One and 97/100 Dollars ($901.97) be and is nondischargeable.