In re Calvin Scott SAUNDERS, Debtor.

THORP CREDIT INC. OF OHIO,
Plaintiff,

v.

Calvin Scott SAUNDERS, Defendant.

Bankruptcy No. 82–0929.
Related Case: 82–01506.

United States Bankruptcy Court,
N.D. Ohio, W.D.

Feb. 13, 1984.

L. Mari Taoka, Toledo, Ohio, for plaintiff.

Samuel G. Bolotin, Toledo, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before this Court upon the Complaint to Determine Dischargeability filed by the Plaintiff-Creditor. At the conclusion of that proceeding the Court requested the parties to submit post-trial briefs and any additional evidence they wished the Court to consider. The Court has reviewed all the evidence and the arguments of counsel, both in the briefs and as presented at the Trial. For the following reasons the Court finds that the debt in question is dischargeable in part and nondischargeable in part.

## FACTS

Sometime prior to the filing of his voluntary Chapter 7 Petition, the Debtor-Defendant received in the mail from the Plaintiff an offer for a guaranteed loan of up to Two Thousand and no/100 Dollars ($2,000.00). Although the exact terms of the offer are unclear, it appears as though the primary requirement for receiving such a loan was an annual income of at least Fifteen Thousand and no/100 Dollars ($15,000.00). Acting on that offer, the Debtor applied for a Two Thousand and no/100 Dollar ($2,000.00) loan on or about July 1, 1982. He offered as evidence of his income a pay stub from his employer which, if taken over the course of one (1) year, reflected an income in excess of the minimum amount. Satisfied that the Debtor met the minimum requirements, the Plaintiff issued the loan and in return took a security interest in all the Debtor's household goods.

On approximately the same day the loan was issued, the Debtor's father had a discussion with his son regarding the latter's financial difficulties and the possibility of seeking legal advice. Several days later the Debtor contacted counsel and discussed with him the possibility of filing bankruptcy. At the time counsel was first contacted the Two Thousand and no/100 Dollar ($2,000.00) check from the Plaintiff had not been cashed. After the Plaintiff decided that he would file a bankruptcy petition, counsel advised him that the check could be cashed and used to purchase exempt property, could be returned to the Plaintiff, or could be turned over to the Trustee that would be appointed. Selecting the first of the three options, the Debtor purchased approximately One Thousand and no/100 Dollars ($1,000.00) worth of clothing for himself and his dependent son. The balance of the loan was used to pay for a weekend trip to Reno, Nevada. When the Debtor returned from the trip on or about July 11, 1982, he had Four Hundred and no/100 Dollars ($400.00) in cash assets remaining. On July 15, 1982, the Debtor filed his petition with this Court.

At Trial, the Debtor testified that he was gainfully employed and that part of his compensation was paid on a commission basis. He further testified that the pay stub offered to the Plaintiff did not represent a consistent rate of pay. That particular stub reflected his compensation from one of his more successful pay periods. He also indicated that he did not have an income in excess of Fifteen Thousand and no/100 Dollars ($15,000.00) for that particular year. The record also reflects that the trip to Reno may have cost more than Six Hundred and no/100 Dollars ($600.00), inasmuch as part of the cash which remained at the time the petition was filed was earned through the Debtor's employment. It should also be noted that the lien on the Debtor's household items has been avoided since the filing of the Petition.

## LAW

Although it is not specifically set forth in the Complaint, the Plaintiff appears to base its allegations of nondischargeability on the provisions of 11 U.S.C. § 523(a) which states in pertinent part:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive . . .

Specifically, the Plaintiff appears to allege that the Debtor's use of the pay stub without clarifying the information contained thereon was a fraudulent use of a written statement for the purpose of obtaining an extension of credit. The Complaint can also be interpreted to allege that the Debtor's contemplation of bankruptcy on or immediately subsequent to the taking of the loan was conduct sufficiently fraudulent so as to disqualify the debt from discharge. In light of the uncertainty as to which of the allegations is intended, both will be considered.

■ It is well established that a debtor may convert non-exempt property into exempt property on the eve of bankruptcy without necessarily committing a fraud upon his creditors. *Matter of Mehrer,* 2 B.R. 309 (Bkrtcy.E.D.Wash.1980), *In re White,* 28 B.R. 240 (Bkrtcy.E.D.Va.1983). Such conversions are only fraudulent to the extent that the exempt property was obtained as the result of fraudulent conduct. *In re White,* supra, 3 *Collier on Bankruptcy* 15th ed. § 522.08[4]. If the exempt property or the funds which were used to acquire the exempt property were dishonestly obtained, the debtor will be denied an exemption in that property. *Matter of Mehrer,* supra. Debtors may not, with the intent to defraud creditors, abuse or take unreasonable advantage of the ability to convert non-exempt into exempt property.

■ When asserting fraud, regardless of whether for the purpose of proving nondischargeability under 11 U.S.C. § 523(a)(2)(A) or that exemptions were wrongfully taken, a plaintiff must show: 1) that the debtor made a representation to the plaintiff, 2) that he knew the representation was false, 3) that it was made with the intent to deceive, 4) that the plaintiff relied on the representation, and 5) that the plaintiff suffered a loss as a result of the representation. *Matter of Lambert,* 21 B.R. 23 (Bkrtcy.E.D.Mich.1980), *In re Benson,* 33 B.R. 572 (Bkrtcy.N.D.Ohio 1983). The fraudulent intent may be inferred from the circumstances of a case, the debtor's conduct, or the debtor's silence. *Matter of Schnore,* 13 B.R. 249 (Bkrtcy.W.D.Wis.1981). Despite a debtor's assertion of an honest motive, a debt will be nondischargeable if

the facts demonstrate that actual fraud has occurred. *In re . Aldrich,* 16 B.R. 825 (Bkrtcy.W.D.Ky.1982).

If, on the other hand, a plaintiff asserts nondischargeability under the provision which addresses the use of a written statement, he must show: 1) that the statement was materially false, 2) that it had to do with the debtor's financial condition, 3) that it was offered to the plaintiff with the intent to deceive, and 4) that the plaintiff reasonably relied on the statement. *In re Goff,* 17 B.R. 564 (Bkrtcy.W.D.Ky.1982). As with an allegation of fraud under 11 U.S.C. § 523(A)(2)(B), intent may be inferred from either the circumstances of the case or the debtor's conduct. However, when proceeding under this section of the Code, the element of reliance is of greater significance. It must be shown that the plaintiff's reliance on the written statement was reasonable. Reasonable reliance is that degree of care which would be exercised in an average business transaction by parties under similar circumstances. *In re Ardelean,* 28 B.R. 299 (Bkrtcy.N.D.Ill.1983). This standard imposes a duty on the creditor to make a reasonable inquiry as to the information provided by the statement and to comply with local standards in doing so.

In the present case, it is apparent that the Debtor submitted the pay stub to the Plaintiff with the intention that it be accepted as proof of income in excess of Fifteen Thousand and no/100 Dollars ($15,-000.00). By doing so he has made a representation to the Plaintiff which he knew to be false. The failure to explain the information on the stub, despite his awareness it did not accurately reflect an income over Fifteen Thousand and no/100 Dollars ($15,-000.00), expressed an intent to deceive the Plaintiff in that regard. The Plaintiff, relying on the stub, issued a loan and thereby sustained the loss it now seeks to recover. Accordingly, all the elements of fraud under 11 U.S.C. § 523(a)(2)(A) appear to have been satisfied.

Similarly, if the facts are applied to the elements of 11 U.S.C. § 523(a)(2)(B), the cause of action would appear to be sus-

tained. The Debtor offered a written document to the Plaintiff which reflected the type of information as to financial condition which was asked for by the Plaintiff. He also used the pay stub under circumstances which expressed an intent to mislead the Plaintiff as to the information thereon. Finally, it is apparent that the Plaintiff relied on that information in making its decision on whether or not to issue the loan.

While it would appear that under either analysis the debt should be held nondischargeable, the element of reliance is not necessarily satisfied merely upon a showing of actual reliance. It must also be determined whether or not the reliance was reasonable. The record does not contain the precise terms of the loan offer. However, it is apparent from the record that the principal factor to be considered in assessing an applicant's eligibility was his annual income. The record does not reflect that the Debtor was required to list his assets or his prior obligations. There has also been no showing that the Plaintiff relied on any representations other than the pay stub. Therefore, under these terms it would be incumbent on the Plaintiff to verify the Debtor's income statement and to inquire into aspects of his employment which affected his income. The record does not show that such an inquiry or verification was made. Therefore, the Plaintiff's failure to do so would be a breach of the duty to adequately guard its interests.

Although the Plaintiff may not have made an adequate inquiry, it is also true that this failure was not the sole cause of the circumstances which give rise to this Complaint. If the Debtor had made a full disclosure at the time he applied for the loan, no allegations of fraud could have been asserted. While the Plaintiff may not have conducted a proper investigation, it was not that failure which necessarily caused the Debtor to submit a misleading statement. As previously indicated, the record does not reflect whether or not the Plaintiff, at the time the Debtor was applying for the loan, asked if the pay stub represented a consistent pay for every pay

period. However, if it was asked of the Debtor, it is entirely possible that he did not give a truthful answer. If it was not asked, it was incumbent on the Debtor, in light of his knowledge as to the minimum income and the inconsistency of his wages, to disclose that which the stub did not. In either event, the Debtor has perpetrated a fraud on the Plaintiff.

It is also apparent that the Plaintiff's conduct was not a contributing factor to the Debtor's unreasonable use of the monies. As previously pointed out, it is permissable to convert cash into exempt property just prior to the filing of a petition. Nonetheless, the Debtor owes some degree of responsibility to his creditors not to take unreasonable advantage of that capability. He was not entitled to utilize funds in a manner which totally disregarded the rights of the creditor to whom the monies may be owed. In this case, if the Debtor had used all the funds to purchase exempt property, the property would be available to the creditor in the event it was determined the loan was wrongfully acquired. However, the Debtor spent approximately half the loan in such a manner so as to be of no potential benefit to this or any other creditor. This type of conversion is not a proper or equitable use of pre-estate funds, especially when they were obtained in a suspect fashion.

In light of the circumstances of this case and the attendant responsibility each party must accept, the Court cannot justify a simple finding as to whether the debt should be held entirely dischargeable or nondischargeable. There has been the requisite showing that the Debtor committed acts which would, in the absence of the Plaintiff's misjudgment, have been sufficient to hold the debts nondischargeable. In addition, the Debtor has abused the ability to convert non-exempt to exempt property. However, the Plaintiff is equally responsible for failing to protect its interests. Accordingly, it must be concluded that the Debtor should be allowed to retain the One Thousand and no/100 Dollars ($1,000.00) in clothing that was purchased with the loan proceeds of the loan, and that this portion of the debt should be declared dischargea-

ble. It must also be concluded that the remaining One Thousand and no/100 Dollars ($1,000.00) should be held nondischargeable.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they were specifically referred to in this Opinion.

It is ORDERED that the debt be, and it is hereby, held dischargeable in the amount of One Thousand and no/100 Dollars ($1,000.00).

It is FURTHER ORDERED that the debt be, and it is hereby, held nondischargeable in the amount of One Thousand and no/100 Dollars ($1,000.00).