In re Arturo PEREZ and Rosa Perez, Debtors.

BARNETT BANK OF POLK COUNTY, Plaintiff,

v.

Arturo PEREZ and Rosa Perez, Defendants.

Bankruptcy No. 88–356–BKC–8P7. Adv. No. 88–121.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Dec. 29, 1988.

James H. Peterson, III, Peterson, Myers, Craig, Crews, Brandon & Mann, P.A., Lakeland, Fla., for plaintiff.

Don M. Stichter, Stichter & Riedel, P.A., Tampa, Fla., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matter under consideration is a Complaint filed by Barnett Bank of Polk County (Plaintiff), the Plaintiff in the above-styled adversary proceeding. The Complaint seeks a determination by this Court that a debt allegedly owing by the Defendants, Arturo and Rosa Perez (Debtors), to the Plaintiff, should be determined to be nondischargeable pursuant to § 523(a)(2)(B) and § 523(a)(2)(A) of the Bankruptcy Code. The facts relevant and germane to a resolution of this matter as established at the final evidentiary hearing are as follows:

Dr. Perez is a medical doctor and in addition is the president of a corporation known as Concept New South, Inc., which is involved in the construction of residential duplexes. It is undisputed that Dr. Perez is basically the financial backer of the corporation, and the active management and control of the corporation is carried out by the Debtors' son Sal Perez, who holds a B.A. degree in Business and Finance.

On July 23, 1984, the Debtors individually and Dr. Perez as president of Concept New South, Inc., executed a mortgage in favor of the First Bankers of Polk County (First Bankers) in the amount of $315,-000.00 on an office building located at 2050 Havendale. (Joint Exh. No. 9) This mortgage was recorded on August 14, 1984. The record further reveals that on August 31, 1984, the Debtors re-executed the mortgage to First Bankers and re-recorded the mortgage on September 6, 1984. (Joint Exh. No. 10)

On August 20, 1984, approximately one month after the initial execution of the First Bankers mortgage, Dr. Perez executed and submitted a financial statement to the Plaintiff in order to procure a loan to refinance the office building. The financial statement listed Dr. Perez' personal assets, and included in the statement was the office building located at 2050 Havendale. It is undisputed that this financial statement was prepared by the Debtor with the assistance of his son, Sal Perez. Schedule D attached to the Financial Statement states that the market value of the office building was $250,000.00 and that the Debtor's equi-

ty in the property was $207,083.00. Schedule D also reveals that Southeast Bank held a mortgage on the office building with a balance owing of $42,971.00 and that the Debtors' monthly mortgage payment to Southeast Bank was $1,046.80. (Joint Exh. No. 1) It is without dispute that the Financial Statement failed to disclose the mortgage on the office building in favor of First Bankers, and it further appears that the Plaintiff was never notified otherwise that a mortgage other than the Southeast Bank mortgage existed on the property, despite the fact that a title search was performed in connection with the loan and mortgage. Finally, the Financial Statement contains a signed statement by Dr. Perez that the Financial Statement was true and complete and would continue "to be true and correct until written notice of change...." (Joint Exh. No. 1)

On January 11, 1985, both Dr. and Mrs. Perez executed a document titled, "Affidavit as to Possession and No Mechanic's Liens" which provided, *inter alia*, in Paragraph 9, "... that the Affiants have not and will not execute any instrument that would adversely affect the title to said real property or the interest of Barnett Bank of Polk County therein." (Joint Exh. No. 2) Paragraph 10 of the same document states that the Affidavit was executed in order to induce the Plaintiff to make a loan to the Debtors in the amount of $240,000.00. (Joint Exh. No. 2)

On January 11, 1985, the Debtors executed a mortgage in favor of the Plaintiffs on the office building, which provided, *inter alia*, that the mortgage was to be a first mortgage on the office building. (Joint Exh. Nos. 4 and 5) It should be noted that the mortgage was signed by Dr. Perez and "Rosa Perez by P[ower] of Att[orney]". It is undisputed that the signature of Rosa Perez was executed by Sal Perez, pursuant to a Power of Attorney executed by Mrs. Perez on January 9, 1985. (Joint Exh. No. 3) It should further be noted that all negotiations for the loan were conducted by Sal Perez. In connection with the mortgage, Dr. Perez executed a promissory note in favor of the Plaintiff

in the total principal amount of $240,000.00 (Joint Exh. No. 6)

It is undisputed that the current balance on the Plaintiff's loan is in the principal amount of $230,696.00 with interest in the amount of $30,717.33 through September 27, 1988, and that after September 27, 1988, interest has accrued and will continue to accrue at the rate of $113.77 per diem (13% per annum).

At the close of the Plaintiff's presentation of evidence, this Court granted the Debtors' Motion for a Directed Verdict as to Mrs. Perez. Therefore, this Court must now consider the dischargeability *vel non* of the amounts owing by Dr. Perez to the Plaintiff.

As noted earlier in its Complaint, the Plaintiff seeks a determination that the debt owed by the Debtors to the Plaintiff should be determined to be nondischargeable pursuant to § 523(a)(2)(A) and (B) of the Bankruptcy Code which provide in pertinent part as follows:

§ 523. **EXCEPTIONS TO DISCHARGE**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—
(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive; ....

Thus, in Count I of the Complaint the Plaintiff contends that through the use of a materially false financial statement, Dr.

Perez obtained the loan from the Plaintiff; that the Plaintiff reasonably relied on the Financial Statement; and that Dr. Perez intended to deceive the Plaintiff through the use of the financial statement. Therefore, the Plaintiff argues that the debt owed by Dr. Perez to the Plaintiff should be determined to be nondischargeable.

In the alternative, the Plaintiff alleges in Count II of the Complaint that the debt should be determined to be nondischargeable pursuant to § 523(a)(2)(A) of the Bankruptcy Code based on Dr. Perez' alleged false representation as to the existence of the mortgage held by First Bankers.

In opposition, although he concedes that he executed the Financial Statement and the mortgage in favor of First Bankers, it is the contention of Dr. Perez that he did not know about the First Bankers mortgage, and that he merely signed without reading various financial papers on behalf of Concept New South, Inc., which were presented to him by his son, Sal, who, as noted earlier, actively controlled and managed the corporation. In fact, Dr. Perez contends that it was his intent for the Plaintiff to be in a first position on the office building. Further, although Dr. Perez concedes he knew the office building was "collateralized" to First Bankers, he claims he did not know that "collateralized" meant that First Bankers held a mortgage on the property.

It is well established that the overriding purpose of the bankruptcy code is to provide the debtor with comprehensive, much-needed relief from the burden of his indebtedness by releasing him from virtually all his debts. *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). In keeping with this policy, the exceptions to discharge set out in § 523 of the Bankruptcy Code are generally construed narrowly against the creditor and in favor of the Debtor. *See In re Hunter*, 780 F.2d 1577 (11th Cir.1986). Thus, the burden lies with the creditor to prove by clear and convincing evidence that a particular obligation of the debtor falls within the scope of § 523. *In re Danns*, 558 F.2d 114 (2d Cir.1977). In meeting this burden

under § 523(a)(2)(B), the Plaintiff must in part prove that the Debtor signed the false financial statement with the requisite intent to deceive. This intent may be inferred from the circumstances of the case or the Debtor's conduct. *In re Icsman*, 64 B.R. 58 (Bkrtcy.N.D.Ohio 1986). For meeting the burden of proof under § 523(a)(2)(A), the Plaintiff must prove fraud, that is, that the conduct of the Debtor involved moral turpitude or intentional wrong. Fraud implied in law which may exist without the imputation of bad faith is clearly insufficient. *In re McAdams*, 11 B.R. 153 (Bkrtcy.Ver.1980).

Regarding the Plaintiff's claim based on § 523(a)(2)(A), this Court is satisfied that the Plaintiff has failed to meet its burden of proof. In order to prove that a debt is nondischargeable pursuant to § 523(a)(2)(A), the plaintiff must prove false pretenses, false representation or fraud *other than* a statement respecting the debtor's financial condition. Here the loan was obtained by a false financial statement concerning Dr. Perez' assets.

Considering next the Plaintiff's claim based on § 523(a)(2)(B) of the Bankruptcy Code, there is no question that the financial statement was false and that the falsity was material. Clearly, a disclosure by Dr. Perez of the mortgage in favor of First Bankers would have affected the Plaintiff's decision whether to enter into a loan transaction with the Debtors. The Plaintiff has likewise met its burden of proof as to its reasonable reliance on the financial statement. Despite the fact that the Plaintiff obtained a title insurance policy on the property, there is no evidence in the record to indicate that the Plaintiff's decision to make the loan was based solely on the title package. At minimum, the Plaintiff partially relied on the financial statement, as there is evidence in the record that the Plaintiff would not have entered into the loan transaction with the Debtors if the obligation to First Bankers had been disclosed. Further, because the title policy did not even reveal the falsity of the financial statement, there is no evidence that indicates that the Plaintiff's own

investigation of Dr. Perez' assets alerted them to the fact that reliance on the financial statement would be unreasonable.

This leaves for consideration the final element of § 523(a)(2)(B): whether the Debtor's failure to disclose the First Bankers' mortgage was done with the requisite intent to deceive, which may be inferred when a debtor knew or should have known the falsity of a statement made or which may be inferred by the Debtor's reckless regard for the truth or evidence establishing a knowing falsity. *See In re Valley,* 21 B.R. 674 (Bkrtcy.D.Mass.1982); *Birmingham Trust National Bank v. Case,* 755 F.2d 1474 (11th Cir.1985) While the Plaintiff has presented no direct evidence as to the Debtors' intent, this Court is satisfied that based on the circumstances and facts surrounding the transaction between the Debtor and the Plaintiff, the Plaintiff has met its burden of proof. There is no question that the Debtor knew the office building was encumbered by an obligation to First Bankers, and his execution of the financial statement without disclosing the same constitutes at minimum a reckless disregard for the truth.

A separate Final Judgment shall be entered in accordance with the foregoing.