In re Lindy L. CARR, Lyn M. Carr f/d/b/a, DeVanti's Steak & Pizza House, Debtors.

Wilbert E. McREYNOLDS, Patsy L. McReynolds, Plaintiffs,

v.

Lindy L. CARR, Lyn M. Carr, Defendants.

Bankruptcy No. 5–84–00057.
Adv. No. 5–84–0016.

United States Bankruptcy Court,
W.D. Kentucky.

April 29, 1985.

Jay Jaffe, Wyatt, Tarrant & Combs, Louisville, Ky., for creditor, David Smith.

Carl D. Frederick, Louisville, Ky., for debtor.

John R. Wilson, Louisville, Ky., Trustee.

## MEMORANDUM OPINION

G. WILLIAM BROWN, Bankruptcy Judge.

This matter comes before the Court on Plaintiffs' Complaint against the debt-ors/defendants, to have the debt due deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

In support thereof, Plaintiffs allege the Defendants engaged in a fraudulent course of conduct by misrepresentation of defendant, Lindy L. Carr's (Carr) skill and expertise as a trader, advisor, and dealer in the future commodities market; that in reliance upon such fraudulent assurances, Plaintiffs placed their trading account under the direction and authority of Carr; that substantial losses occurred as a direct result thereof; that such authority to trade in their account would not have been given but for the defendant Carr's material misrepresentations; and that defendant, Lyn Carr (Lyn) actively assisted Carr in the perpetration of this fraudulent scheme with its resultant losses to the Plaintiffs.

Following the taking of requested discovery, a trial was held on the merits of Plaintiffs' Complaint. Based upon the testimony and documents properly admitted into evidence, the following constitutes Findings of Fact and Conclusions of Law on the issues presented.

On or about October 6, 1983, Plaintiff, McReynolds, was introduced to defendant, Carr, while both were attending a symposium on commodity trading in Chicago. At this time Carr was using an alias, "Eddie Butler", which fact was later disclosed to McReynolds when he visited Carr in Kentucky. While in Chicago, McReynolds had several conversations with "Butler" disclosing his desire to obtain professional guidance in futures trading. "Butler" assured McReynolds that he had been trading three or four years and had devised a system that was 80–82% efficient and profitable. Carr further outlined his experience, skills, and success in trading other accounts as well as his own. Performance charts of prior notable successes were produced and two significant gains in lumber and beans were cited as proof of the credibility of "Butler's" system.

Mesmerized by defendant's glowing tales of success, McReynolds authorized "But-

ler" to trade his account, which at that time was approximately $40,400.00. Under this arrangement, Carr would be entitled to a percentage of the profits accruing to McReynolds account and resulting from the use of the Carr system.

On or about October 30, 1983, Plaintiff and his wife arrived·at defendant's Gilbertsville, Kentucky home to participate in a five day seminar designed to explain the defendant's system of trading. A fee of $10,000.00 for the seminar was paid to Carr. This fee would be earned if McReynolds' account reflected a 10% increase during the five day trading period, using the Carr method. At this time also, Carr explained the use of the alias Eddie Butler to plaintiffs and advised them of his real name. Both wives, although not parties to the original Chicago meeting, participated in the seminar and are joined herein as parties.

At the time the plaintiffs arrived and commenced the seminar, McReynolds trading account had been reduced in value to approximately $28,000.00 from the original amount therein when defendant, Carr, began trading the account on October 10, 1983, a reduction of $12,400.00 in a twenty (20) day period.

Upon completion of this seminar, the fee was paid having apparently been earned based on the formula justifying same. The Plaintiffs, now apprised of "Butler's" real identity and endowed with a five day personal introduction to his system, returned to Louisiana, somewhat less hypnotized by defendant's rosy promises and projections. It is noteworthy that the Plaintiff's wife advised against continued involvement under defendant's tutelage at the completion of the instruction period. This advice to McReynolds, while intuitive, well-reasoned, and prophetically sound, received the attention usually reserved for unsolicited spousal advice. Carr continued to trade in McReynolds account.

During the period November 6, 1983 through January 31, 1984, continual dialogue was maintained between the parties relative to the steadily deteriorating pattern in McReynolds' account. By December 26, 1983, the balance was approximately $19,000.00. Distressed over his eroding account, McReynolds threatened to cancel Carr's authority. As a gesture of reassurance, Carr promised in writing to have the account worth $50,000.00 by January 31, 1984, or be personally liable therefor, if permitted to continue trading the account. On January 31, 1984, the balance was $4,700.00 McReynolds' demand of Carr to remit the difference of $45,300.00 was not fulfilled and the Defendants filed this petition for Chapter 7 relief on June 11, 1984. This Adversary Proceeding inevitably followed attacking the dischargeability of the debt.

■ It is unquestioned that the party seeking to have its debt excepted from discharge pursuant to Section 523 bears the burden of proof by the fair preponderance of the evidence. *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934); *In re Baiata,* 12 B.R. 813 (Bkrtcy., E.D.N.Y.1981); and *In re Maiolo,* 12 B.R. 114 (Bkrtcy., N.D.Ga.1981).

■ Further, to except a debt from discharge under Section 523(a)(2)(A), the creditor must establish that the bankrupt made a representation which he then knew to be false, the representation was made with the intent to deceive, the creditor reasonably relied on the representation, and damage was sustained as a direct result. *In re Kyriazes,* 38 B.R. 353 (Bkrtcy., N.D. Ill.1983). In determining whether a debt is nondischargeable, the test to be applied in determining a creditor's reasonable reliance is whether the false representation was a sufficiently material consideration that in all probability credit would not have been extended had the truth been known. *Matter of Weinstein,* 31 B.R. 804 (Bkrtcy. E.D.N.Y.1983).

It is the opinion of the Court that the losses occasioned by McReynolds during the period October 10, 1983 through October 30, 1983 are directly attributable to the materially false representations made by defendant, Carr. These representations

were knowingly false, knowingly made, for the purpose of being relied upon, and were so relied upon with the resultant loss of $12,400.00. The evidence clearly establishes that Carr was less than candid or honest in Chicago. The distortions and misstatements as to his credentials, clients, and success were substantial and material misrepresentations. The record is replete with half truths, mental reservations, and actual falsehoods which Carr used to entice McReynolds to rely upon and use the "Butler" system.

In fact, Carr had not experienced notable success either in his account or in others accounts in 1982 or 1983. The alleged documentation supporting these success stories was in fact bogus and depicted actually paper trades or hypothetical trading under the "System" rather than trades in established practice. While McReynolds was naive to rely upon Carr's unsubstantiated credentials, he in fact did so rely for this brief period. While this reliance was ill-placed, to the limited extent a loss was incurred during this restrictive period, such loss in the amount of $12,400.00 is nondischargeable.

■ After October 30, 1983, however, McReynolds was on notice of material inconsistencies in Carr's alleged background and experience, as well as the actual loss experienced in his own account. McReynolds was charged with knowledge such as an inquiry would have disclosed as to Carr's expertise and background. As noted in *Matter of Bisbach*, 36 B.R. 350 (Bkrtcy., W.D.Wisc.1984), the extent to which a creditor must exercise his duty of ordinary care depends upon the relative sophistication of the parties, the nature of the representations, and the ease of conducting an investigation.

■ There is no question but that Carr intended McReynolds to rely upon the misrepresentations. The entire dealings between the parties over a prolonged period graphically demonstrated this intent. While a person's intent is often incapable of direct proof, it may be inferred from the totality of the circumstances surrounding the transaction. *In re Wightman*, 36 B.R. 246 (Bkrtcy., N.D.1984).

■ McReynolds' background and experience as an attorney compels a greater display of business acumen than that required of others. Thus, the debtors' duty to fully and accurately disclose that which is material and should be disclosed is tempered with the creditors' duty to exercise ordinary care in the reliance displayed. *In re Saunders*, 37 B.R. 766 (Bkrtcy., N.D. Ohio 1984).

■ Applying the law to the facts of this case, it is the opinion of the Court that McReynolds, in the exercise of ordinary care, had no right to rely upon the misrepresentations of Carr, and is personally responsible for any and all losses which were incurred subsequent to October 30, 1983.

As to the defendant, Lyn Carr, the record reflects she did participate in the seminar conducted in defendants' home and further did engage in some correspondence with Plaintiffs subsequent to October 30, 1983. The standards for establishing nondischargeability of debt because of false representations are to be strictly construed in favor of the debtor, with the party objecting to dischargeability carrying the burden of proof on each element. *In re Sutton*, 39 B.R. 390 (Bkrtcy., M.D.Tenn.1984). In the instant case, it is the Court's opinion that the Plaintiffs have failed to sustain their requisite burden of proof as to the actions complained of against the defendant, Lyn Carr.

Accordingly, and for the reasons above set forth, the Complaint against the defendant, Lynn Carr, will be dismissed by separate order. The Complaint against the defendant, Carr, will be deemed nondischargeable in the amount of $12,400.00.

The above constitutes Findings of Fact and Conclusions of Law pursuant to Rules of Bankruptcy Procedure 7052, and a separate Order consistent therewith will be entered this date.

A copy of this Memorandum-Opinion was mailed to Wilbert McReynolds and to Mark Whitlow.