**In re Philip Robert HAVEL, Debtor.**

**BECK SUPPLIERS, INC., Plaintiff,**

v.

**Philip Robert HAVEL, Defendant.**

Bankruptcy No. 84–0239.
Related Case: 84–01164.

United States Bankruptcy Court,
N.D. Ohio, W.D.

March 25, 1987.

Thomas J. Schank, Hunter & Schank, Toledo, Ohio, for plaintiff.

Joseph Shibley, Toledo, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Motion For Summary Judgment filed by the Defendant-Debtor in the above entitled adversary action. The parties have filed their arguments respecting the merits of this Motion and have had the opportunity to respond to the arguments submitted by opposing counsel. The Court has reviewed those arguments as well as the entire record in this case. Based upon that review and for the following reasons, the Court finds that the Motion For Summary Judgment should be granted, and that Judgment should be entered for the Debtor on both Counts of the Complaint.

## FACTS

The facts in this case do not appear to be in serious dispute. Prior to the filing of his Petition, the Debtor was the sole owner of a corporation known as Gas 'n Save, Inc.

This corporation was engaged in the retail sales of gasoline and related products. The Plaintiff in this case was the supplier of gasoline to the Debtor's business.

Prior to October 29, 1982, all sales of fuel made by the Plaintiff to the Debtor's business were made to the corporation. It appears that these sales were conducted under an informal oral contract, whereby all transactions between the parties were credited on an "open-ended" account. Under this Agreement, the corporation was not required to pay for the items sold by the Plaintiff at the time they were delivered. It was, however, required to make periodic payments to the Plaintiff for the items purchased. The evidence does not reflect any regularity in the time or amount of the payments which were made prior to October 29, 1982.

However, as of October 29, 1982, the obligation owed by the corporation to the Plaintiff was approximately Ninety-five Thousand Three Hundred Sixty-two and 54/100 Dollars ($95,362.54). As the result of its concerns over the size of this obligation and the corporation's inability to reduce the debt, the Plaintiff requested that the Debtor execute an agreement, whereby he would personally guarantee payment of the corporation's debt. Such an agreement was executed by the Debtor on or about October 28, 1982. In addition to this request, the Plaintiff opened a new account against which all future sales of gasoline would be charged. This account was opened in the name of the Debtor in his individual capacity. It should be noted that at the time the Plaintiff initiated its sales under this new account, it did not request any financial statement or other written documents from the Debtor respecting his financial condition.

Subsequent to October 2, 1982, all sales of gasoline to the Debtor's business were charged to the Debtor's individual account. As business continued under this new arrangement, the Debtor made periodic payments for the items which were delivered by the Plaintiff and charged to his account. The Debtor also made payments on the account which belonged to the corporation.

However, on or about February 28, 1983, the Plaintiff requested that the Debtor execute a promissory note for the amount which was still owed by the corporation. Although the amount and terms of the instrument are not set forth, the Debtor executed such a note.

On or about August 3, 1983, the Debtor tendered two checks to the Plaintiff which were drawn on an account owned by the corporation. These instruments were given as payments for the products delivered by the Plaintiff and were credited by the Plaintiff to the Debtor's account. It appears that these payments were intended to be part of the regular payments which were being made by the Debtor on his account. There is no evidence which indicates that they were motivated by a particular delivery or by the expressed intentions of the Plaintiff to discontinue business with the Debtor. The Plaintiff negotiated these checks and credited their proceeds against the Debtor's individual account. However, the instruments were subsequently returned to the Plaintiff by the drawee bank for insufficient funds.

On or about August 8, 1983, prior to the return of the August 3, 1983, checks, the Debtor issued an additional check to the Plaintiff. This check was also negotiated by the Plaintiff and was credited to the Debtor's account. However, as with the prior instrument, it was eventually returned for insufficient funds. The Debtor's Affidavit reflects that these three checks were issued by the Debtor with the expectation that they were not to be negotiated until such time as the Debtor notified the Plaintiff of sufficient funds in the account.

The Plaintiff filed an action against the Debtor in the Sandusky County Court of Common Pleas. The purpose of this action was to recover the amount owed by the Debtor on the promissory note. Although the events which occurred between the parties subsequent to the filing of this action are not clear, it appears that the parties terminated their relationship on or about August 25, 1983. As of this date, there remained on the Debtor's individual account a balance of approximately Thirty-one Thousand Five Hundred Seventy and 01/100 Dollars ($31,570.01). As of November 30, 1983, there was a balance on the corporation's account of approximately Ninety-two Thousand Three Hundred Seventy-four and 42/100 Dollars ($92,374.42). While the dispute is not specifically made a part of these proceedings, it appears that the termination of the relationship resulted, in part, from claims made by the Debtor regarding the quality of the Plaintiff's products. It appears that the Debtor incurred certain expenses for repairs which arose from the Plaintiff providing an allegedly improper mixture of methyl alcohol and gasoline. However, judgment was rendered for the Plaintiff in the State Court action on April 10, 1984, in the amount of Eighty-nine Thousand Fifty-one and 80/100 Dollars ($89,051.80) plus interest.

On July 17, 1984, the Debtor filed his individual voluntary Chapter 7 Petition with this Court. In the schedules which accompany that Petition, the Debtor lists the obligations owed to the Plaintiff from the operation of his business. Although the debt appears on the schedule as only one obligation, the amount of the debt is the approximate amount of the Debtor's obligation for both his individual account and the corporation's account.

In response to the filing of the Debtor's Petition, the Plaintiff initiated the above entitled adversary action. In this case, the Plaintiff asserts two causes of action. The first action seeks a determination as to the Debtor's eligibility to receive a discharge. It is alleged in the Complaint that the Debtor failed to maintain adequate records of his business, and has destroyed such records prior to filing his Petition. The second cause of action challenges the dischargeability of the debts owed by the Debtor on the business accounts. In this action, it is alleged that the Debtor made fraudulent misrepresentations when he established credit with Plaintiff. It appears that the allegations of this cause are primarily directed at the issuance of the three checks which were ultimately returned for insufficient funds.

The Motion presently before the Court seeks a summary adjudication of the Plaintiff's Complaint. In asserting that Motion, the Debtor contends that the circumstances of this case cannot, in any fashion, demonstrate sufficient facts so as to entitle the Plaintiff to the requested relief. In support of this Motion, the Debtor offers the deposition of an officer of the Plaintiff and the exhibits which accompany the testimony. That evidence demonstrates the circumstances of the sales to the Debtor, the history of their relationship, and the terms under which the most recent transactions were conducted. The debtor also offers his own Affidavit in support of his Motion. In that document, he avers to the fact that at the time the checks were issued he had the intent to make good on the instruments, and that he was unaware of the fact that the Plaintiff had opened a new account on October 29, 1982. He also avers that he kept records of his business affairs, and that he has not destroyed or concealed any such records.

In opposing the Motion for Summary Judgment, the Plaintiff has argued that the evidence clearly reflects the Debtor's intent to defraud. It is argued that the Debtor, at the time the checks were executed, indicated he was unable to cover the checks as a result of the damages which arose from the defective gasoline. The Plaintiff indicates that the amount of the damages were not sufficiently large so as to preclude the Debtor's ability to cover the checks. Accordingly, it is argued that the discrepancy between the Debtor's explanation and the amount of the claims is indicia of the Debtor's intent to defraud. It should be noted that the Plaintiff offers no independent evidence to support its argument.

## LAW

■ The provisions of 11 U.S.C. § 523(a)(2) state in pertinent part:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition ...

In order to demonstrate fraud or a false pretense for purposes of 11 U.S.C. § 523(a)(2), a plaintiff must prove: 1) that the defendant made a representation, 2) that the representation was false, 3) that the representation was made with the intent to deceive, 4) that the plaintiff reasonably relied on the representation, and 5) that a loss was sustained as a result of the reliance. *Clyde Savings Bank Co. v. Kleinoeder (In re Kleinoeder)*, 56 B.R. 77 (Bkcy.N.D.Ohio 1985). In order to fulfill the element of reliance, it must be shown that under the facts and circumstance the plaintiff's reliance was to "so unreasonable as not to be actual reliance at all". *Coman v. Phillips (In re Phillips)*, 804 F.2d 930, 933 (6th Cir.1986). It must also be shown that there was actual, as opposed to constructive, intent to deceive. *Wilson v. Mettetal (In re Mettetal)*, 41 B.R. 80 (Bkcy. D.Tenn.1984). While such intent may be implied by the facts and circumstances of the case, it cannot be presumed. *McReynolds v. Carr (In re Carr)*, 49 B.R. 208 (Bkcy.W.D.Ky.1985). Where there is room for an inference of honest intent, the question of fraudulent intent must be resolved in favor of the debtor. *Wilson v. Mettetal, supra.*

■ A party may be granted summary judgment if it can be shown that there are not questions of material fact with regard to the action, and that a party is entitled to judgment as a matter of law. *See,* Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56. When reviewing a motion for summary judgment, the facts must be construed in a manner most favorable to the non-moving party. However, if the moving party brings forward evidence which otherwise entitles it to summary judgment, the opposing party may not rest on its pleadings. Rather it must come forward with evidence which demonstrates that there are genuine issues of material fact which must be tried. *Briggs v. Kerrigan,* 431 F.2d 967 (1st Cir.1970). The party opposing a motion for summary judgment

does not establish issues of fact merely by offering conclusory and unsupported arguments. *Bryant v. Kentucky*, 490 F.2d 1273 (6th Cir.1974).

In the present case, the evidence offered by the Debtor shows that he made payments on the corporation's account during the period in question. These were in addition to the payments which were made on the account for which he was primarily liable. The testimony shows that although the Plaintiff began selling fuel to the Debtor on or about October 29, 1982, the terms of sale remained ostensibly the same as those which were in effect when the Plaintiff was selling to the corporation. This course of dealing entailed the delivery of goods to the business and charging the requisite account for the amount of the delivery. In return, the Debtor would make periodic payments on this account. There does not appear to have been an established pattern or requirement as to the frequency or amount of the payments. While there is some evidence to reflect that payments were made by both cash and check, there is nothing which indicates that the checks which were returned to the Plaintiff for insufficient funds were, at the time they were tendered, in any way different from those payments already being made on the accounts. Specifically, there is nothing to demonstrate that the checks were offered in response to the Plaintiff's intent to discontinued service.

Based upon these facts, it is apparent the Debtor represented to the Plaintiff that he would and was able to pay for any products delivered to his business. This representation may be implied from the circumstances of the parties' dealings and from the nature of the credit transaction. *See, Mid-American National Bank & Trust Co. v. Higgs (In re Higgs)*, 39 B.R. 181 (Bkcy.N.D. Ohio 1984). Inasmuch as the Debtor has not paid for the Plaintiff's products, it is also apparent in this case that the Debtor's representation was false. Furthermore, it is evident that the Plaintiff has been damaged as a result of the Debtor's failure to meet his obligation. Accordingly, it must be concluded that the first, second, and fifth elements of fraud have been shown.

However, there is no evidence which supports or suggests that the Debtor maintained, at the time he issued the checks in question, an intent to deceive the Plaintiff as to his willingness to pay. In addition, there is nothing to suggest that at the time the Debtor entered into the arrangement with Plaintiff he intended to defraud the Plaintiff of the products. Rather, the evidence presented by the Debtor clearly indicates that the checks on which the Plaintiff primarily relies, though issued on an account which was insufficient to cover the instruments, were intended to be part of the Debtor's continuing efforts to pay his debt. There is no material distinction between the tender of these checks and the other payments made on the accounts. While the checks may have been tendered prematurely, it does not appear that they were offered with the ultimate intent of acquiring the products without being held responsible for payment. The Debtor's inability to pay resulted more from the Debtor's failure to timely deposit sufficient funds to cover the instruments.

In addition to the Debtor's testimony regarding his intent to make the checks good, the record reflects other evidence which is indicative of the absence of wrongful purpose. A review of the account ledgers finds that the Debtor made other payments on the account subsequent to the execution of the instruments. These payments have the effect of negating the assertion that the checks were tendered with the intent to defraud the Plaintiff, inasmuch as such continued payments are wholly inconsistent with any fraudulent purpose which might be inferred from or ascribed to the Debtor's issuance of checks on an insufficiently funded account. This effect is made especially apparent in light of the fact that at one point, the Debtor reduced by approximately sixty percent (60%) the amount which was owed on the account at the time the checks were delivered.

An intent to deceive is not shown by the issuance of a check if the debtor, at the time of issuance, executed the check in good faith and with a reasonable belief that

it would be made good before the drawee presented it for payment. *Timberline Systems, Inc. v. Hammett (In re Hammett),* 49 B.R. 533 (Bkcy.M.D.Fla.1985). In the present case, the Debtor has testified as to the absence of intent to defraud the Plaintiff. This testimony is supported by other facts and circumstances, as well as the reasonable inferences which may be drawn therefrom. Therefore, based upon the evidence presented by the Debtor and the absence of any evidence which can reasonably be construed as establishing a wrongful intent, it must be concluded that there are no questions of material facts as to the lack of an intent to deceive. Without such intent, there are no circumstances under which the Plaintiff would be able to prevail in this case. Accordingly, the Debtor is entitled to judgment as a matter of law.

■ The Plaintiff has argued that the difference between the amount of the checks and the amount paid in damages for defective fuel is indicative of the Debtor's wrongful intent. This argument is asserted as a result of the contention that the Debtor, at the time the checks were executed, requested that they not be cashed until some time in the future. The explanation which accompanied this request was that he did not have sufficient funds available to pay both the checks and the damages resulting from defective fuel. It is argued by the Plaintiff that the defective fuel damages, which totalled approximately Five Thousand and no/100 Dollars ($5,000.00), did not significantly impair the ability to cover approximately Twenty-nine Thousand and no/100 Dollars ($29,000.00) in checks. This, it is argued, is evidence of the Debtor's intent to defraud the Plaintiff of the delivered products.

The Plaintiff's argument, though marginally relevant to the question of intent, is not supported by any substantial evidence. Furthermore, even if such evidence could be shown, it would do little to show that the Debtor intended to defraud the Plaintiff. To the extent the facts are relevant to the question of intent, the Plaintiff's interpretation of the facts presupposes the existence of a wrongful state of mind. How-

ever, this interpretation is not the only plausible explanation which may be derived from the circumstances. As has been previously discussed, there are other facts and circumstances which suggest that the Debtor did not possess a wrongful motive. Since the evidence allows for differing inferences, the Court must resolve those differences in favor of the Debtor. *Wilson v. Mettetal, supra.* Although the Court, for purposes of summary judgment, must construe the facts in favor of the non-moving party, the Plaintiff has not presented any evidence which lends itself to a construction of the facts in its favor.

Furthermore, the Plaintiff must be able to raise a question as to the existence of actual fraud. Presumptions or suppositions of fraud are not permissible. *See, Wilson v. Mettetal, supra.* Since the Plaintiff has not demonstrated any facts which reasonably suggest the presence of actual fraud, and since the Plaintiff's contentions rely solely upon a presumption of wrongful intent, it must be concluded that there is no question as to whether fraudulent intent existed during the time the parties were conducting business. Clearly, the evidence presently before this Court indicates that no such intent was maintained by the Debtor. Accordingly, the Plaintiff's argument is without merit.

■ As to the Plaintiff's action to deny the Debtor's discharge, there is nothing in the record which indicates that the Debtor participated in any activity which constitutes grounds for such a denial. The Complaint alleges that the Debtor "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any records information including books, documents, records, and papers from which the Debtor's financial condition or business transactions might be ascertained." It is noted that these allegations quote the provisions of 11 U.S.C. Section 727 which set forth the grounds upon which a discharge may be denied. In reviewing the actions, it is apparent that the Complaint does not state specific facts which support the otherwise bald allegations. Furthermore, the Debtor's affidavit testimony denies any conduct which is ad-

dressed in the Plaintiff's Complaint. In addition, the Plaintiff has failed to present evidence addressing the Debtor's entitlement to a discharge, let alone evidence raising questions of material fact. In the absence of such evidence, it must be concluded that the affidavit testimony is sufficient to defeat any questions of material fact as to the denial of discharge action. Accordingly, it must also be concluded that the Debtor is entitled to a dismissal of this Count of the Complaint.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that the Motion For Summary Judgment be, and is hereby GRANTED.

It is FURTHER ORDERED that the Plaintiff's Complaint be, and is hereby DISMISSED.