**FLORIDA NATIONAL BANK, Plaintiff,**

v.

**William King GORDON & Sharon Demarko Gordon, Defendant(s).**

**Bankruptcy No. 88–9051.**

United States Bankruptcy Court, N.D. Florida, Pensacola Division.

Sept. 29, 1988.

Arby Van Slyke, Pensacola, Fla., for plaintiff.

William King Gordon, pro se.

James R. McAtee, Pensacola, Fla., Trustee.

## MEMORANDUM OF OPINION

LEWIS M. KILLIAN, Jr.,
Bankruptcy Judge.

THIS CAUSE came on for trial September 22, 1988, on the complaint of plaintiff, Florida National Bank ("Bank"), seeking exception from discharge of its claim pursuant to 11 U.S.C. § 532(a)(2)(A) and (B). The plaintiff was represented at trial by counsel and the debtor/defendants appeared *pro se.* The claims plaintiff seeks to have excepted from discharge consist of $5,188.11 principal plus interest on a credit line and $1,951.37 principal plus interest on a consumer promissory note. The debtors admit that the debts are valid in the amounts claimed but dispute their nondischargeability.

Plaintiff's complaint centers on financial statements given by both debtors in March of 1985 in order to obtain a $5,000 line of credit with the Bank. In a written financial statement given by Mrs. Gordon on March 5, 1985, the assets listed included art and antiques with a value of $75,000. In Mr. Gordon's financial statement given on March 18, 1985, assets included $12,000 worth of rare books and a lithograph collection with a value of $7,000.

The loan officer who approved the credit line testified that the assets reflected on

the Gordon's financial statements were a major factor in evaluating the application. The high ratio of assets to liabilities appeared to give the debtors sufficient liquidity to enable them to pay the bank in full even if their income was not sufficient to make payments.

In addition to the $5,000 credit line, Mrs. Gordon, in her maiden name Sharon Demarko, requested and obtained a $2,000 loan evidenced by a consumer promissory note on December 5, 1985. This loan was renewed in the amount of $1,951.37 on March 22, 1986, and again on July 25, 1986. All that was required in connection with approval of this loan was an updated credit bureau report. The loan officer testified that he relied once again on the financial statement previously given by Mrs. Gordon in approving the loan.

The Gordon's defaulted on both loans and actions were filed by the bank for collection of the sums due. Final Judgment on the consumer note was entered against Mrs. Gordon (Sharon Demarko) in the amount of $2,485 on November 17, 1986. The action on the credit line was stayed by the filing of the debtors' petition under Chapter 7 on January 7, 1988.

The schedules filed by debtors in this case reflect only $800 worth of "Books, pictures and other art objects, stamps, coin and other collections." The explanation given by the debtors for this great disparity is that they valued the artwork in the financial statement on the basis of what it could potentially be worth at some time in the future if the artists achieved "collector status." They acknowledged that the art actually had very little resale value other than the cost of materials and frames. With respect to the rare books, they placed a value based on what they would have to pay to replace what were, in reality, old books with no special value. They admitted that if the books were to be sold, they would be sold by the pound. With respect to the alleged $7,000 lithograph collection, Mr. Gordon had no explanation for the fact that it was no longer in his possession nor did he offer any basis for a $7,000 value in the financial statement. Finally, the debt-

ors testified that they had given the stereo equipment and tape recorders to their son during 1987 and that various other items, including artwork, had been given to Mrs. Gordon's former husband during 1986 and 1987 in order to avoid putting a strain on their relationship.

Based on the foregoing findings of fact, we conclude that plaintiff is entitled to have its claims excepted from discharge under § 523(a)(2)(B) of the Bankruptcy Code.

Section 523(a)(2)(B) provides:

§ 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

Exceptions to discharge as set forth in § 523 are to be liberally construed in favor of the debtor and strictly construed against the creditor, *In re Hunter*, 780 F.2d 1577 (11th Cir.1986), to carry out the "fresh start" policy of the Bankruptcy Code. *In re Linn*, 38 B.R. 762 (9th Cir. BAP 1984). The creditor seeking a determination of nondischargeability bears the burden of proving by clear and convincing evidence the elements set forth in § 523(a)(2)(B). *In re Hunter*, supra, at 1579.

In the instant case, plaintiff extended credit to the debtors in reasonable reliance on the personal financial statements given it by the debtors. The bank officer's testimony regarding his evaluation of their apparent liquidity and his testimony that

but for the high asset to liability ratio he would not have approved the loans sufficiently proves reasonable reliance. That the financial statements were materially false is likewise clear. The values placed on the debtor's artwork bore absolutely no relationship to reality, and the debtors were aware of that fact. While everyone owning an original work of art envisions the day that the artist achieves fame and the work becomes valuable, such dreams cannot form the basis of valuation of that art on a personal financial statement.

The debtors' assertions that they did not mean to deceive the bank bear no weight. Even if the false statements were not knowingly made, they were made so recklessly as to constitute fraud on the creditor. *Knoxville Teachers Credit Union v. Parkey,* 790 F.2d 490 (6th Cir.1986).

■ Plaintiff's claim under § 523(a)(2)(A), based on the same facts cannot stand. § 523(a)(2)(A) and (a)(2)(B) are mutually exclusive remedies since (B) is based on the use of a fraudulent statement regarding the debtors' financial condition and (A) is based on fraud other than a statement regarding the debtors' financial condition. Since the only allegations of fraud relate to the financial statements, then there is no cause of action alleged under § 523(a)(2)(A).

■ Finally, the plaintiff asks that judgment on the claims be entered by the Court to include an award of accrued interest, both pre and post petition, and attorneys fees. With respect to attorney's fees, there is no authority in the Code for awarding fees to a prevailing plaintiff in a dischargeability action. 3 *Collier on Bankruptcy* ¶ 523.12 (15th rev. ed. 1988). With respect to interest on the loans, this Court finds no authority for excepting from discharge any sums in excess of the principal amount of credit actually extended by the complaining creditor in reliance on the false financial statements.

· Accordingly, we find that plaintiff is entitled to judgment in the amount of $7,139.48 and is further entitled to have such judgment excepted from the general discharge received by the debtors pursuant to § 727 of the Bankruptcy Code.

A separate final judgment will be entered in accordance herewith.