**In re Ronald Lee DUNSTON, et al., Debtors.**

**Joy EVANS a/k/a Joy Castro, Plaintiff/Appellee/Cross–Appellant,**

v.

**Ronald Lee DUNSTON, Defendant/Appellant/Cross–Appellee.**

Civ. A. No. 90–K–1761.
Bankruptcy No. 88 B 9871 E.
Adv. No. 88 A 1069.

United States District Court, D. Colorado.

Oct. 13, 1992.

Jeffrey Cohen, Denver, Colo., for plaintiff.

James Mitchem, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Ronald Lee Dunston appeals from a judgment of the bankruptcy court excepting from discharge his $35,000 debt to Joy Evans, his mother. The bankruptcy judge found the debt nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code. That section states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting debtor's or an insider's financial condition. . . .

11 U.S.C. § 523(a)(2)(A).

The judge did not except a sum of $25,000 that Dunston owed Evans. Evans has filed a cross-appeal to have the $25,000 excepted from discharge. Jurisdiction is based on 28 U.S.C. § 158(a). For reasons discussed below, I affirm in part and reverse in part, remanding for reconsideration of one issue under a different standard of law.

### I. FACTS AND PROCEDURAL HISTORY

Ronald Dunston operated and marketed several restaurants before and during 1986. Among the restaurants were Boston Gardens, the Majestic Saloon, and Ronnie D's.

On July 22, 1986, Dunston contacted his mother, Joy Evans, and requested her to loan him $25,000 to help raise funds in conjunction with the formation of Ronnie D's. Dunston promised to repay the loan at twenty percent interest. There is conflicting evidence whether this loan was the first part of a larger loan for which Evans would receive some stock in the restaurants. In her testimony, Evans had no

written notes and could not recall the exact percentages of stock that she claimed Dunston offered her as part consideration for the $25,000. (Tr. at 162, 166.) The two promissory notes evidencing the $25,000 transaction mention only that "the interest, stocks, shares, et cetera, will be worked out at a later date." (Tr. at 161.) Evans also testified that the fact Dunston was her son "was probably one of the reasons" for her lending him $25,000. (Tr. at 192).

On July 29, 1986, Evans advanced an additional $35,000 to Dunston after Dunston expressed an immediate need for another loan. Evans arranged for the money to be wired just minutes before she negotiated the terms with Dunston. This time, Evans understood more definitively that she would be repaid at twenty percent *and* would also receive common stock consisting of twenty percent of Ronnie D's, five percent of Boston Gardens, five percent of the Majestic Saloon, and ten percent of the stock in Dunston's next business venture. Evans took written notes documenting the discussion concerning the stock. In addition, all evidence, including Dunston's direct testimony, suggests that discussions about the stock had been occurring for some time before this transfer. (R.Doc. 77 at 5, ¶ 11.)

Evans did not check to see whether Dunston actually owned any stock options in the restaurants. Dunston had borrowed and fully repaid money from Evans in earlier years, and Evans trusted that her son would continue to conduct honest business with her. She presumed that inherent in Dunston's offer of stock was his legal ability to transfer it. (Tr. at 197.) Testimony indicates that Evans did not have much money left and was counting on being repaid and receiving equity for her loan. (Tr. at 190, 193, 197.)

During these discussions, Dunston also requested a future loan of $15,000. Evans testified that, although she made it clear to Dunston that she could not make a future loan of $15,000, Dunston did not revoke his promise of stock as part of the $35,000 transfer. (Tr. at 190.) Evans believed that the stock shares corresponded to the $35,-

000 and were not dependent on the $15,000 loan. (Tr. at 191.) Dunston was able to repay $3,890 before financial difficulties prevented him from making further payments.

On July 31, 1987, Evans filed an action in Colorado state court against Dunston, his wife, Boston Gardens, and Ronnie D's. This action ended in a default judgment in Evans' favor. In the judgment, the state court determined that Evans had reasonably relied on Dunston's fraudulent, intentionally false representations and was therefore entitled to repayment of the $60,000 plus punitive damages. (Pl's Ex. K, ¶ 5.)

On July 26, 1988, Dunston and his wife filed a petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. On November 29, 1988, Evans filed an adversary complaint seeking to have the entire $60,000 excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) and (B). Evans also claimed that the bankruptcy court was collaterally estopped from relitigating the state court's determination that Dunston had engaged in fraud.

The bankruptcy court held hearings to determine if all Evans' claims warranted full litigation. During testimony, the Dunstons' state court attorney, Michael Feeley, testified that he was not sure if the Dunstons had received notice of entry of default or if they recognized the importance of the case, given their plans to file for bankruptcy in the future. (Tr. at 28, 30, 32.) He acknowledged that his clients' preoccupation with plans for filing bankruptcy and his own feeling that Evans would prevail on at least some of the state court claims made them less aggressive in litigating the state court action. (Tr. at 40.) Feeley stated that neither he nor the Dunstons ever responded or defended against the motion for default in state court. (Tr. at 43.) The bankruptcy court held that it was not collaterally estopped from relitigating the issue of nondischargeability because the claims of fraud were not actually litigated and Dunston had not been afforded a full and fair opportunity to present his

case in the state court. (R.Doc. 75 at 2, ¶¶ 4, 9, 10.)

The bankruptcy court dismissed Evans' § 523(a)(2)(B) claim because it could not find that the financial statement in question was false or that Evans had actually relied on this statement. The court then considered Evans' remaining claim under § 523(a)(2)(A) and rendered a judgment allowing discharge for the first $25,000 loan but excepting the remaining $35,000 from discharge. The judge found that (1) Dunston made false oral representations and created false pretenses regarding his legal option to convey shares of common stock in the restaurants and (2) Evans reasonably relied on these representations. Records of the Liquor Enforcement Division of the Colorado Department of Revenue were admitted into evidence, showing that Dunston never disclosed that he had a direct or effective financial interest in the restaurants. (R.Doc. 77, ¶¶ 4–8.) Dunston also did not disclose his alleged ownership of stock options when he filed for bankruptcy. No evidence corroborates Dunston's claim that he owned such options. (R.Doc. 77, ¶ 4.)

On August 16, 1990 Evans moved to amend the judgment and findings. On August 23, 1990, the bankruptcy court granted the motion in part, assessing costs against Dunston and making specific findings that Dunston made promises concerning stock before Evans extended the $25,000 loan. The bankruptcy court found, however, that these promises were not clear and that Evans had not reasonably relied on them. Dunston moved to reconsider, and this motion was denied. Both parties now appeal the judgment under § 523(a)(2)(A). I do not consider the claim dismissed under § 523(a)(2)(B).

## II. DISCUSSION

### A. DUNSTON'S APPEAL

#### 1. Intent to Defraud

■ Dunston first contests the bankruptcy court's finding that he intended to engage in fraud under § 523(a)(2)(A). The court found that Dunston's offer of stock was an intentional false representation and created a false pretense that Dunston had authority to transfer stock. (R.Doc. 77 at 20.) After listening to all testimony and reviewing documentary evidence, the court ruled that (1) Dunston did not own any options for stock of the restaurants, and (2) if he owned options, Dunston failed to disclose this fact to state authorities or to the bankruptcy court when he filed under Chapter 7. (Id. at 12–13). The judge also found specifically that Dunston was "simply not a credible witness" because his testimony was "laced with inconsistencies and rife with ambiguity." (Id. at 13). Dunston claims that these findings were clearly erroneous and that a preponderance of evidence does not support the court's decision holding his $35,000 debt nondischargeable.

The root of Dunston's argument is that the court committed an error of law by completely ignoring Dunston's testimony that demonstrated his bona fide belief in his legal authority to transfer stock. His belief, Dunston maintains, should refute any possible finding that he intended to defraud Evans. Dunston argues that the bankruptcy court disregarded salient testimony and focused solely on Dunston's lack of a legally enforceable right to convey stock.

At the outset, I note the Supreme Court's recent ruling that the applicable burden of proof in § 523(a) actions is "a preponderance of the evidence." *Grogan v. Garner*, 498 U.S. 279, ——, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). The bankruptcy court's judgment occurred before this decision and therefore rested on the previous clear and convincing evidence standard. *See Driggs v. Black (In re Black)*, 787 F.2d 503, 505 (10th Cir.1986). Nevertheless, Dunston argues that under either a clear and convincing evidence standard or a preponderance of the evidence standard, the judge's findings are clearly erroneous.

■ Determining dischargeability of a debt is a "core proceeding" involving numerous factual findings. *See First Bank of Colo. Springs v. Mullet (In re Mullet),*

817 F.2d 677, 678 (10th Cir.1987); *Branding Iron Motel, Inc. v. Sandlian Equity, Inc. (In re Branding Iron Motel, Inc.)*, 798 F.2d 396, 399 (10th Cir.1986). I may overturn these findings only if they are clearly erroneous. *In re Mullet*, 817 F.2d at 678. When acting as the finder of facts, the bankruptcy judge has discretion to consider the credibility of witnesses. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). The district court must then give due deference to the bankruptcy court's findings of credibility. Bankr.R. 8013.

The bankruptcy court did not ignore Dunston's testimony, but rather drew a different conclusion from the entirety of the testimony and evidence than Dunston would have liked. Because neither the Colorado Department of Revenue records nor the bankruptcy filings ever mentioned a legal stock option under Dunston's name, it was reasonable for the judge to conclude that Dunston knew he did not have such a legal option although he represented that he did. It was also reasonable for the judge to note the credibility problems inherent in the contradictions between this evidence and Dunston's testimony. The bankruptcy court's ruling was not deficient under either the clear and convincing *or* the preponderance of the evidence standard.

### 2. *Evans' Reliance on Dunston's Misrepresentations*

Dunston also argues that the court clearly erred in finding that Evans reasonably relied on Dunston's promises of stock shares when Evans decided to loan him $35,000. Dunston does not take issue with the court's finding of false representations, but he argues that Evans could not have possibly "reasonably relied" on these representations. He contends that Evans arranged for the $35,000 to be wired to him before he and Evans made an agreement about the stock shares and that the mother-son bond was therefore the primary reason Evans loaned him the money. Finally, Dunston claims that because Evans did not fully understand that his offer of stock was contingent on Evans contributing an additional $15,000, she could not have reasonably relied on such a misunderstanding.

Exceptions to discharge "are construed narrowly," and the burden of proof "is on the party opposing discharge." *In re Black*, 787 F.2d at 505. Even a very strong showing of false representation or false pretenses does not obviate a demonstration of actual, reasonable reliance. *In re Mullet*, 817 F.2d at 680. Reasonable reliance must be evaluated according to the particular circumstances of the case. *Id.* at 679. The false representations must be sufficiently material such that the creditor would not have extended the loan if she had known the truth. *McReynolds v. Carr (In re Carr)*, 49 B.R. 208, 210 (Bankr. W.D.Ky.1985). Other factors, such as an ongoing relationship of trust between the creditor and debtor, may have bearing on the character of the reliance. For example, in *Northern Trust Co. v. Garman (In re Garman)*, because the creditor and debtor were "like brothers," the court found the creditor's failure to verify the debtor's repeated false representations over a three year period was not unreasonable and did not justify a finding that there was no actual reliance. 643 F.2d 1252, 1259–60 (7th Cir.1980), *cert. denied*, 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981).

Applying the law to the issues presented here reinforces the court's conclusion that Evans reasonably relied on Dunston's misrepresentations. The judge adhered to the strict standards that must be satisfied to except a discharge under § 523(a)(2)(A). He proceeded through an extensive evaluation of Dunston's false representations and pretenses in order to conclude that Evans reasonably relied on these statements.

Furthermore, like the parties in *Garman*, Evans and Dunston, mother and son, had a close relationship. Given her prior history of trust in lending money to her son, her current financial state, and the suggestive discussions about stock that she had with Dunston, it was reasonable for Evans to believe and rely on Dunston's promises to repay and convey stock to her. In addition, the gap in time between Evans'

wiring of the 35,000 and the ensuing detailed stock discussions was so insignificant that this sequence of events blended into essentially one transaction. Evans had reason to believe that these promises would take definite shape during the negotiations she and Dunston had together while waiting for the transfer of the money.

Finally, the fact that Evans and Dunston disagreed over whether the options were dependent on a future loan of $15,000 does not render Evans' reliance unreasonable. Dunston did not object or withdraw the promised stock when Evans refused to make a further loan. She did not believe she misunderstood the agreement, but, as the judge found, she reasonably understood the $35,000 loan was the basis for the transfer of the stock. The bankruptcy judge was not clearly erroneous in his finding of reasonable reliance, and his conclusion that the $35,000 debt was nondischargeable under § 523(a)(2)(A) was supported by a preponderance of the evidence.

### 3. Bankruptcy Court's Award of Costs to Evans

Finally, Dunston challenges the bankruptcy court's award of costs to Evans in the amount of $1,332.55. Although the judge found that an award of costs enumerated in Evans' bill of costs was appropriate and just under Bankruptcy Rule 7054(b) and 28 U.S.C. § 1920, Dunston claims that an award of costs is a question of law and should be reviewed de novo. In federal courts, the award of costs is reviewed under an abuse of discretion standard. *Riggs v. Scrivner, Inc.*, 927 F.2d 1146, 1149 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991).[1]

Dunston contends that Evans is not, for purposes of awarding costs, the "prevailing party" because Evans succeeded on only her § 523(a)(2)(A) claim, while her collateral estoppel and § 523(a)(2)(B) claims were dismissed by the bankruptcy court.

For purposes of awarding costs to the "prevailing party," two statutory provisions are relevant. Bankruptcy Rule 7054(b) allows a court to award costs to the "prevailing party" if a statute does not otherwise provide. In addition, under nonbankruptcy law, costs awarded by a federal court may include fees for copies, witnesses, court reporters, and docket fees. *See* 28 U.S.C. § 1920.

General principles of civil procedure assist in defining "prevailing party." In awarding costs, the court must look at the case as a whole to determine who is the prevailing party, and a "party need not prevail on every issue to be entitled to costs." *Fogleman v. ARAMCO (Arabian Am. Oil Co.)*, 920 F.2d 278, 285 (5th Cir.1991). After determining who is the prevailing party, it is within the discretion of the judge to decide what costs were "reasonably necessary to the litigation." *Moe v. Avions Marcel Dassault–Breguet Aviation*, 727 F.2d 917, 936 (10th Cir.), *cert. denied*, 469 U.S. 853, 105 S.Ct. 176, 83 L.Ed.2d 110 (1984). For example, whether a deposition was necessary to the litigation for purposes of awarding costs is not determined solely by whether it was used at trial. *See Ross v. Hilltop Rehabilitation Hosp.*, 124 F.R.D. 660, 661 (D.Colo.1988); *Ramos v. Lamm*, 539 F.Supp. 730, 754 (D.Colo.1982), *remanded by* 713 F.2d 546 (10th Cir.1983).

The bankruptcy court acted within the perimeters of the law and did not abuse its discretion in awarding costs. Although Evans clearly did not prevail on all her original claims, she did prevail on the central § 523(a)(2)(A) claim that went to trial. This victory stood substantively for a find-

---

1. In his motion to strike Evans' bill of costs, Dunston argued before the bankruptcy court that 11 U.S.C. § 523(d) limits an award of costs to the debtor in dischargeability proceedings. Dunston asserted that "attorneys' fees and costs incurred by a creditor in prosecuting a nondischargeability claim cannot be awarded by the court." Section 523(d) clearly applies only in cases where a creditor has *unsuccessfully* requested that a debt be excepted from discharge. *See, e.g., Florida Nat'l Bank v. Gordon*, 91 B.R. 135, 138 (Bankr.N.D.Fla.1988). Moreover, in this case, Evans was awarded only costs, not attorney fees. Nevertheless, Dunston did not raise these arguments in his statement of issues to be presented at appeal or in his briefs, so I may treat them as waived.

ing that Dunston had defrauded her. Because she prevailed on this claim, then, it was within the court's discretion to award her costs associated with her litigation. While her bill of costs primarily includes deposition expenses that the court did not use directly to decide the § 523(a)(2)(A) claim, it certainly used the depositions indirectly to reach a decision in favor of Evans. Evans incurred the costs of the listed depositions and exhibit copies as part of the entire process of the lawsuit. Thus, the bankruptcy court exercised its sound discretion in awarding Evans costs.

## B. EVANS' CROSS–APPEAL

### 1. Collateral Estoppel

In her cross-appeal, Evans challenges the bankruptcy court's conclusion that collateral estoppel did not bar relitigation of the issue. of Dunston's fraud, as set forth in the state court default judgment of May 20, 1988. She also contends that the Full Faith and Credit Clause of the U.S. Constitution mandates the same conclusion. Finally, Evans maintains that the bankruptcy judge erroneously shifted the burden of proof to Evans to show that collateral estoppel should apply.

■ Because the bankruptcy court's decision not to apply collateral estoppel was a question of law, I must review this issue de novo. *Johnson v. Laing (In re Laing)*, 945 F.2d 354, 357 (10th Cir.1991). The operation of the Full Faith and Credit Clause includes collateral estoppel. *See Braselton v. Clearfield State Bank*, 606 F.2d 285, 287 (10th Cir.1979). For this reason, my analysis will focus solely on the collateral estoppel claim.

■ First, the bankruptcy court was correct in holding that the party using offensive collateral estoppel bears the burden of proving that the elements of issue preclusion have been met. *See Spilman v. Harley*, 656 F.2d 224, 229 (6th Cir.1981); *Merrill v. Walter E. Heller & Co. (In re Merrill)*, 594 F.2d 1064, 1067 (5th Cir.1979); *Sutherland v. Brown (In re Brown)*, 66 B.R. 13, 15 (Bankr.D.Utah 1986).

■ In order for collateral estoppel to bar future litigation of an issue: (1) the issue being raised in the subsequent suit must be identical to the issue determined in the first suit, (2) the issue must have been actually litigated in the first suit and (3) the determination of the issue must have been essential to the judgment in the first suit. *Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir.1988). The Supreme Court has held that federal law requires federal courts, in general, to give the same preclusive effect to a state judgment as the laws and courts of that state would. *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 525, 106 S.Ct. 768, 772, 88 L.Ed.2d 877 (1986).

■ The Supreme Court recently reconfirmed that collateral estoppel applies in dischargeability proceedings. *Grogan v. Garner*, 498 U.S. at ——, n. 11, 111 S.Ct. at 658, n. 11. The bankruptcy court must give collateral estoppel effect to all issues that were "actually litigated" and "necessary to the resulting final and valid judgment," and for which the defendant had a "full and fair opportunity" to present his case. *In re Wallace*, 840 F.2d at 765; *see also Goins v. Day (In re Day)*, 137 B.R. 335, 339 (Bankr.W.D.Mo.1992); *Pacific Energy & Minerals, Ltd. v. Austin (In re Austin)*, 93 B.R. 723, 726 (Bankr.D.Colo. 1988); *Bishop v. Herwig (In re Herwig)*, 77 B.R. 662, 663–64 (Bankr.S.D.Ill.1987).

■ Colorado courts operate by this same standard. Although the general rule in Colorado is to give preclusive effect to default judgments, this principle still contains the caveat that the issues precluded must have been actually litigated. *In re Austin*, 93 B.R. at 727; *Ortega v. Board of County Comm'rs*, 683 P.2d 819, 821 (Colo. App.1984). "Actual litigation" does not necessitate a full trial, but a full and fair opportunity for the defendant to present his case. *In re Austin*, 93 B.R. at 727. Particularly in default actions, in deciding whether to apply issue preclusion, the bankruptcy court must make sure the important issues were litigated by looking at the entire record and not just the state court judgment. *Id.* at 728.

Bankruptcy courts have exclusive jurisdiction to determine dischargeability actions under § 523. *Brown v. Felsen*, 442 U.S. 127, 135–36, 99 S.Ct. 2205, 2211–12, 60 L.Ed.2d 767 (1979). Thus, in a dischargeability proceeding, it is especially important that the judge look at the entire record from the state court action to ensure that all issues given preclusive effect have been actually litigated and presented. *Spilman v. Harley*, 656 F.2d at 228. A bankruptcy court can deny preclusive effect to the state default judgment if the findings were "conclusory" or the record, pleadings, and affidavits do not enable the bankruptcy court to discern the basis of the facts. *Harold V. Simpson & Co. v. Shuler (In re Shuler)*, 722 F.2d 1253, 1257–1258 (5th Cir.), *cert. denied*, 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984).

Finally, in state court actions leading up to bankruptcy filings, it is not uncommon that a party will put its energy into filing bankruptcy and decide that active participation in state court litigation is not worth the expense. The defaulting party will lose the lawsuit, but the default judgment is not always given collateral estoppel effect. *See United States v. Gottheiner (In re Gottheiner)*, 703 F.2d 1136, 1140 (9th Cir. 1983).

The parties do not dispute that two of the three collateral estoppel elements exist here. First, the facts were identical to those in question here. The findings of a false representation or intentional fraud inducing reasonable reliance satisfy the proof needed for fraud under § 523(a)(2)(A). *See In re Mullet*, 817 F.2d at 680. Second, the finding of "fraud beyond a reasonable doubt" was essential to the state court judgment, in that it was the basis of the award of punitive damages.

The default judgment against Dunston, however, did not satisfy the third element of collateral estoppel. Dunston did not have full and fair opportunity to present his case. Although two cases in this jurisdiction have given collateral estoppel effect to a default judgment, these cases are distinguishable. In *In re Austin*, the bankruptcy judge precluded the defendant from relitigating an issue determined in a state default judgment because the defendant had completed discovery, presented all his arguments and issues for trial, and failed to appear at three separate trial dates set by the state court. 93 B.R. at 729. The defendant therefore had full and fair opportunity to present his case. In *In re Wallace*, the issues proceeded through a full trial process and were therefore actually litigated. 840 F.2d at 765. Two bankruptcy cases which held that issue preclusion was applicable also differ from Dunston's case. In these cases, because the state courts heard and considered all evidence before determining issues and entering default judgment, collateral estoppel was effective. *See also In re Day*, 137 B.R. at 339; *In re Herwig*, 77 B.R. at 664.

In this case, the parties never completed discovery, and the state court did not hear all the evidence. The documents, interrogatories, and answers to interrogatories never clarified all the facts. Feeley's testimony regarding the Dunstons' distraction from the state court proceedings is particularly telling of weak participation and defense. The bankruptcy court's special jurisdiction to determine dischargeability is significant here. Because the court could not conclude that the findings of fraud were fully presented, defended, and litigated in the state court, it was under a duty to litigate anew the factual issues necessary to the determination of dischargeability. Therefore, I affirm the bankruptcy court's conclusion that the state court default judgment did not preclude litigation of Dunston's fraud under § 523(a)(2)(A).

### 2. Reasonable reliance

Evans also contends that the court's findings that Dunston's promises of stock were not "sufficiently firm, clear, and specific" before the $25,000 loan and that Evans did not reasonably rely on the promises were ambiguous and clearly erroneous. Evans states that the court's findings could be interpreted either to mean that Evans did not rely on the promises or that there could not have possibly been reasonable reliance because the terms of Dunston's promise

were not sufficiently clear or firm to justify reliance. Evans asserts that the court disregarded her testimony and erred as a matter of law in requiring that the terms of a promise be material and clear for reliance to be reasonable.

 In order for reasonable reliance to occur under § 523(a)(2)(A), there must be proof of intentional false representation and actual, reasonable reliance on the representation. *See In re Mullet,* 817 F.2d at 679. The false representations must be "sufficiently material" and substantial so that a creditor's reliance is reasonable, or that the creditor probably would not have extended a loan if she had known the truth. *In re Carr,* 49 B.R. at 210. A false representation is not material or sufficiently clear if it consists of a mere opinion, expectation, or declaration of intention. *See Smith v. Meyers (In re Schwartz & Meyers),* 130 B.R. 416, 423 (Bankr.S.D.N.Y. 1991). If the creditor receives incomplete and unclear information and fails to attach importance to it or pursue further inquiry, the creditor cannot later claim reasonable reliance on such information or representations. *See Heinold Commodities & Secs., Inc. v. Hunt (In re Hunt),* 30 B.R. 425, 451 (M.D.Tenn.1983) (reliance under § 523(a)(2)(B)). Although partial reliance may suffice as reasonable reliance for nondischargeability purposes, a creditor cannot "overcome the unreasonableness of its reliance by claiming only 'partial' dependence" on a false representation. *Id.* at 452 n. 35.

 Under the former clear and convincing evidence standard which, at the time of its ruling, the bankruptcy court was under a duty to apply, these findings are not clearly erroneous. There was not clear and convincing evidence showing that Dunston's promises were more than amorphous or that Evans reasonably relied on these promises.

**2.** Appellee Evans also argues that the appeal should be dismissed for lack of appellate jurisdiction due to Dunston's failure to file a timely appeal under Bankruptcy Rule 8002. On November 27, 1990, I ruled on an identical motion filed by Evans on October 26, 1990. I held that

 Nevertheless, under current law the standard of proof in a § 523(a) action is a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. at ——, 111 S.Ct. at 661. Following the " 'normal rule' " of retroactivity, this standard has been applied retroactively to dischargeability proceedings. *See Luce v. First Equip. Leasing Corp. (In re Luce),* 960 F.2d 1277, 1281 (5th Cir.1992); *Johnson v. Keene (In re Keene),* 135 B.R. 162, 166 (Bankr. S.D.Fla.1991). Although the Supreme Court in *Grogan* did not address retroactivity specifically, it implied that its decision should apply retroactively when it emphasized that Congress had always intended the standard of proof in dischargeability proceedings to be a preponderance of the evidence. *See In re Keene,* 135 B.R. at 166–67. The Tenth Circuit has applied *Grogan* retroactively in a similar context. *See First Nat'l Bank of Gordon v. Serafini (In re Serafini),* 938 F.2d 1156, 1157 (10th Cir.1991) (remanding for redetermination of debtor's § 727 discharge under *Grogan* standard).

Therefore, the bankruptcy court's findings in this case must be tested under this new standard. Although there was not clear and convincing evidence of sufficiently clear promises and reasonable reliance, there may be a preponderance of the evidence warranting a conclusion of reasonable reliance. Since I may not make credibility determinations or new factual findings, I reverse and remand this issue to the bankruptcy court for further determination under the *Grogan* standard.[2]

## CONCLUSION

Based on the analyses above, I affirm all but one of the issues brought on appeal and cross-appeal. The bankruptcy judge's findings of Dunston's intent to defraud Evans and Evans' reasonable reliance on misrepresentations in making a $35,000 loan were both reasonable factual findings sup-

the court has jurisdiction to hear the case. Because I have already ruled on this issue, and Evans has not invoked any new supporting arguments, I need not consider this redundant claim.

ported by a preponderance of the evidence. The judge's award of costs to Evans constituted an exercise of sound discretion. Also, the bankruptcy judge correctly denied collateral estoppel effect to the state court's findings of fraud. I note that the bankruptcy judge did a commendable job with the evidence and testimony in front of him, but nevertheless reverse and remand his finding that there was no reasonable reliance by Evans on clear stock promises before her $25,000 loan. It is the duty of the bankruptcy judge to make findings under the new preponderance of the evidence standard.